UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| JPMORGAN CHASE BANK, N.A., | Case No. 2:17-CV-74 JCM (PAL) |
| Plaintiff(s), | ORDER |
| v. | |
| SFR INVESTMENTS POOL 1, LLC, et al., | |
| Defendant(s). | |

Presently before the court is plaintiff JPMorgan Chase Bank, N.A.'s motion for summary judgment. (ECF No. 40). Defendants SFR Investments Pool 1, LLC ("SFR") and Rancho Las Brisas Master Homeowners Association ("the HOA") filed responses (ECF Nos. 44, 45), to which plaintiff replied (ECF No. 46).

Also before the court is the HOA's motion for summary judgment. (ECF No. 36). Plaintiff filed a response (ECF No. 43), to which the HOA replied (ECF No. 47).

Also before the court is SFR's motion for summary judgment. (ECF No. 39). Plaintiff filed a response (ECF No. 43), to which SFR replied (ECF No. 48).

**I.     Facts**

This case involves a dispute over real property located at 4856 La Cumbre Drive, Las Vegas, Nevada, 89147 (the "property"). (ECF No. 1).

*i.     Plaintiff's interest in the property*

Fidel Pajarillo purchased the property in 2005. *Id.* On August 29, 2005, Pajarillo obtained a loan in the amount of $227,500 from Washington Mutual Bank, FA ("WM") to finance the purchase. (ECF No. 40-1). The loan was secured by a deed of trust recorded on September 7, 2005. *Id.*

**James C. Mahan**
**U.S. District Judge**

In 2008, WM was closed by the Office of Thrift Supervision. The Federal Deposit Insurance Corporation ("FDIC") was appointed as WM's receiver. On September 25, 2008, plaintiff entered into a purchase and assumption agreement with the FDIC to obtain all beneficial interest in the deed of trust. (ECF No. 40-2).

    *ii.    Defendants' interest in the property*

On September 3, 2009, Nevada Association Services ("NAS") acting on behalf of the HOA, recorded a notice of delinquent assessment lien, stating an amount due of $1,026. (ECF No. 39-1 at 43). On November 20, 2009, NAS, acting on behalf of the HOA, recorded a notice of default and election to sell to satisfy the delinquent assessment lien, stating an amount due of $1,907. (ECF No. 39-1 at 53).

On September 21, 2012, NAS recorded a notice of foreclosure sale, stating an amount due of $4,647.17 and an anticipated sale date of October 19, 2012. (ECF No. 39-1 at 92). On January 11, 2013, the HOA foreclosed on the property. (ECF No. 39-2 at 8-10). SFR purchased the property at the foreclosure sale for $16,600. *Id.* A foreclosure deed in favor of SFR was recorded on January 16, 2013. *Id.*

    *iii.    Procedural history*

On January 9, 2017, plaintiff filed the underlying complaint, alleging causes of action for quiet title and unjust enrichment. (ECF No. 1). On April 12, 2017, SFR filed counterclaims against plaintiff for (1) declaratory relief/quiet title pursuant to NRS 30.010 *et seq*, NRS 40.010, and NRS 116.3116; and (2) preliminary and permanent injunction.[1] (ECF No. 21).

## II.    Legal Standard

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

---

[1] SFR also filed these claims as crossclaims against Pajarillo. (ECF No. 21).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040,

- 3 -

1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**III.   Discussion**

As an initial matter, claim (2) of SFR's counterclaim will be dismissed without prejudice as the court follows the well-settled rule that claims for "injunctive relief" standing alone are not causes of action. *See, e.g.*, *In re Wal-Mart Wage & Hour Emp't Practices Litig.*, 490 F. Supp. 2d 1091, 1130 (D. Nev. 2007); *Tillman v. Quality Loan Serv. Corp.*, No. 2:12-CV-346 JCM RJJ, 2012 WL 1279939, at *3 (D. Nev. Apr. 13, 2012) (finding that "injunctive relief is a remedy, not an independent cause of action"); *Jensen v. Quality Loan Serv. Corp.*, 702 F. Supp. 2d 1183, 1201 (E.D. Cal. 2010) ("A request for injunctive relief by itself does not state a cause of action.").

Plaintiff raises the following grounds in support of its motion for summary judgment and against defendants': due process and *Bourne Valley*; defects in the foreclosure deed; commercial unreasonability; and SFR's failure to qualify as a bona fide purchaser. (ECF Nos. 40, 43, 46). Plaintiff argues, in the alternative, that if the court rules in favor of defendants on the parties' quiet title claims, that the court should let plaintiff's unjust enrichment claim proceed to trial. The court will first address plaintiff's quiet title arguments.

   *a. Quiet title*

Under Nevada law, "[a]n action may be brought by any person against another who claims an estate or interest in real property, adverse to the person bringing the action for the purpose of determining such adverse claim." Nev. Rev. Stat. § 40.010. "A plea to quiet title does not require any particular elements, but each party must plead and prove his or her own claim to the property

in question and a plaintiff's right to relief therefore depends on superiority of title." *Chapman v. Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013) (citations and internal quotation marks omitted). Therefore, for a party to succeed on its quiet title claim, it needs to show that its claim to the property is superior to all others. *See also Breliant v. Preferred Equities Corp.*, 918 P.2d 314, 318 (Nev. 1996) ("In a quiet title action, the burden of proof rests with the plaintiff to prove good title in himself.").

Section 116.3116(1) of the Nevada Revised Statutes[2] gives an HOA a lien on its homeowners' residences for unpaid assessments and fines; moreover, NRS 116.3116(2) gives priority to that HOA lien over all other liens and encumbrances with limited exceptions—such as "[a] first security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent." Nev. Rev. Stat. § 116.3116(2)(b).

The statute then carves out a partial exception to subparagraph (2)(b)'s exception for first security interests. *See* Nev. Rev. Stat. § 116.3116(2). In *SFR Investments Pool 1 v. U.S. Bank*, the Nevada Supreme Court provided the following explanation:

> As to first deeds of trust, NRS 116.3116(2) thus splits an HOA lien into two pieces, a superpriority piece and a subpriority piece. The superpriority piece, consisting of the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges, is "prior to" a first deed of trust. The subpriority piece, consisting of all other HOA fees or assessments, is subordinate to a first deed of trust.

334 P.3d 408, 411 (Nev. 2014) ("*SFR Investments*").

Chapter 116 of the Nevada Revised Statutes permits an HOA to enforce its superpriority lien by nonjudicial foreclosure sale. *Id*. at 415. Thus, "NRS 116.3116(2) provides an HOA a true superpriority lien, proper foreclosure of which will extinguish a first deed of trust." *Id.* at 419; *see also* Nev. Rev. Stat. § 116.31162(1) (providing that "the association may foreclose its lien by sale" upon compliance with the statutory notice and timing rules).

Subsection (1) of NRS 116.31166 provides that the recitals in a deed made pursuant to NRS 116.31164 of the following are conclusive proof of the matters recited:

> (a) Default, the mailing of the notice of delinquent assessment, and the recording of the notice of default and election to sell;

---

[2] The 2015 Legislature revised Chapter 116 substantially. 2015 Nev. Stat., ch. 266. Except where otherwise indicated, the references in this order to statutes codified in NRS Chapter 116 are to the version of the statutes in effect in 2011–13, when the events giving rise to this litigation occurred.

    (b) The elapsing of the 90 days; and
    (c) The giving of notice of sale[.]

Nev. Rev. Stat. § 116.31166(1)(a)–(c).[3] "The 'conclusive' recitals concern default, notice, and publication of the [notice of sale], all statutory prerequisites to a valid HOA lien foreclosure sale as stated in NRS 116.31162 through NRS 116.31164, the sections that immediately precede and give context to NRS 116.31166." *Shadow Wood Homeowners Assoc. v. N.Y. Cmty. Bancorp., Inc.*, 366 P.3d 1105 (Nev. 2016) ("*Shadow Wood*"). Nevertheless, courts retain the equitable authority to consider quiet title actions when a HOA's foreclosure deed contains statutorily conclusive recitals. *See id.* at 1112.

Here, the parties have provided the recorded notice of delinquent assessment, the recorded notice of default and election to sell, the recorded notice of foreclosure sale, and the recorded trustee's deed upon sale. *See* (ECF Nos. 39-1, 39-2). Pursuant to NRS 116.31166, these recitals in the recorded foreclosure deed are conclusive to the extent that they implicate compliance with NRS 116.31162 through NRS 116.31164, which provide the statutory prerequisites of a valid foreclosure. *See id.* at 1112 ("[T]he recitals made conclusive by operation of NRS 116.31166 implicate compliance only with the statutory prerequisites to foreclosure."). Therefore, pursuant to NRS 116.31166 and the recorded foreclosure deed, the foreclosure sale is valid to the extent that it complied with NRS 116.31162 through NRS 116.31164.

---

[3] The statute further provides as follows:

    2. Such a deed containing those recitals is conclusive against the unit's former owner, his or her heirs and assigns, and all other persons. The receipt for the purchase money contained in such a deed is sufficient to discharge the purchaser from obligation to see to the proper application of the purchase money.

    3. The sale of a unit pursuant to NRS 116.31162, 116.31163 and 116.31164 vests in the purchaser the title of the unit's owner without equity or right of redemption.

Nev. Rev. Stat. § 116.31166(2)–(3).

Importantly, while NRS 116.3116 accords certain deed recitals conclusive effect—*e.g.*, default, notice, and publication of the notice of sale—it does not conclusively, as a matter of law, entitle the buyer at the HOA foreclosure sale to success on a quiet title claim. *See Shadow Wood*, 366 P.3d at 1112 (rejecting contention that NRS 116.31166 defeats, as a matter of law, actions to quiet title). Thus, the question remains whether plaintiff has demonstrated sufficient grounds to justify setting aside the foreclosure sale. *See id.*

"When sitting in equity . . . courts must consider the entirety of the circumstances that bear upon the equities. This includes considering the status and actions of all parties involved, including whether an innocent party may be harmed by granting the desired relief." *Id.*

### 1. *Due process*

Plaintiff argues that NRS Chapter 116 is unconstitutional under *Bourne Valley*, wherein the Ninth Circuit held that the HOA foreclosure statute is facially unconstitutional. (ECF No. 40). Plaintiff further contends that *Bourne Valley* renders any factual issues concerning actual notice irrelevant. *Id.* at 6.

The Ninth Circuit held that NRS 116.3116's "opt-in" notice scheme, which required a HOA to alert a mortgage lender that it intended to foreclose only if the lender had affirmatively requested notice, facially violated mortgage lenders' constitutional due process rights. *Bourne Valley*, 832 F.3d at 1157–58. The facially unconstitutional provision, as identified in *Bourne Valley*, exists in NRS 116.31163(2). *See id.* at 1158. At issue is the "opt-in" provision that unconstitutionally shifts the notice burden to holders of the property interest at risk. *See id.*

"A first deed of trust holder only has a constitutional grievance if he in fact did not receive reasonable notice of the sale at which his property rights was extinguished." *Wells Fargo Bank, N.A. v. Sky Vista Homeowners Ass'n*, No. 315CV00390RCJVPC, 2017 WL 1364583, at *4 (D. Nev. Apr. 13, 2017). To state a procedural due process claim, a claimant must allege "(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998).

Here, plaintiff has failed to show that it did not receive proper notice. Plaintiff does not argue that it lacked notice, actual or otherwise, of the event that affected the deed of trust (*i.e.*, the foreclosure sale). Further, the exhibits attached to defendant SFR's motion for summary judgment demonstrate that plaintiff received actual notice. *See* (ECF No. 39-1). Accordingly, plaintiff's challenge based on due process and *Bourne Valley* fails as a matter of law.

### 2. *Whether the foreclosure deed granted defendant a mere lien interest*

Plaintiff argues that the language in the foreclosure deed conveyed a mere lien interest to SFR, and was not effective to transfer title to the property. (ECF No. 40). Plaintiff cites the language in the foreclosure deed stating that the HOA hereby grants to SFR "all of its rights, title and interest in and to that certain property . . . ." *Id.* This language does not demonstrate that SFR purchased a lien interest in the property. However, by being the top bidder at the foreclosure sale, SFR obtained title to the property. *See* Nev. Rev. Stat. 116.31164(3)(a).

### 3. *Commercial reasonability*

Plaintiff argues that the foreclosure sale was commercially unreasonable because the HOA sale price was less than 10% of the fair market value of the property, which is grossly inadequate so as to justify setting the foreclosure aside. (ECF No. 43 at 23).

NRS 116.3116 codifies the Uniform Common Interest Ownership Act ("UCIOA") in Nevada. *See* Nev. Rev. Stat. § 116.001 ("This chapter may be cited as the Uniform Common-Interest Ownership Act"); *see also SFR Investments*, 334 P.3d at 410. Numerous courts have interpreted the UCIOA and NRS 116.3116 as imposing a commercial reasonableness standard on foreclosure of association liens.[4]

---

[4] *See, e.g.*, *Bayview Loan Servicing, LLC v. Alessi & Koenig, LLC*, 962 F. Supp. 2d 1222, 1229 (D. Nev. 2013) ("[T]he sale for $10,000 of a Property that was worth $176,000 in 2004, and which was probably worth somewhat more than half as much when sold at the foreclosure sale, raises serious doubts as to commercial reasonableness."); *SFR Investments*, 334 P.3d at 418 n.6 (noting bank's argument that purchase at association foreclosure sale was not commercially reasonable); *Thunder Props., Inc. v. Wood*, No. 3:14-cv-00068-RCJ-WGC, 2014 WL 6608836, at *2 (D. Nev. Nov. 19, 2014) (concluding that purchase price of "less than 2% of the amounts of the deed of trust" established commercial unreasonableness "almost conclusively"); *Rainbow Bend Homeowners Ass'n v. Wilder*, No. 3:13-cv-00007-RCJ-VPC, 2014 WL 132439, at *2 (D. Nev. Jan. 10, 2014) (deciding case on other grounds but noting that "the purchase of a residential property free and clear of all encumbrances for the price of delinquent HOA dues would raise grave doubts as to the commercial reasonableness of the sale under Nevada law"); *Will v. Mill Condo. Owners' Ass'n*, 848 A.2d 336, 340 (Vt. 2004) (discussing commercial reasonableness standard and concluding that "the UCIOA does provide for this additional layer of protection").

In *Shadow Wood*, the Nevada Supreme Court held that an HOA's foreclosure sale may be set aside under a court's equitable powers notwithstanding any recitals on the foreclosure deed where there is a "grossly inadequate" sales price and "fraud, unfairness, or oppression." 366 P.3d at 1110; *see also Nationstar Mortg., LLC v. SFR Invs. Pool 1, LLC*, 184 F. Supp. 3d 853, 857–58 (D. Nev. 2016). In other words, "demonstrating that an association sold a property at its foreclosure sale for an inadequate price is not enough to set aside that sale; there must also be a showing of fraud, unfairness, or oppression." *Id*. at 1112; *see also Long v. Towne*, 639 P.2d 528, 530 (Nev. 1982) ("Mere inadequacy of price is not sufficient to justify setting aside a foreclosure sale, absent a showing of fraud, unfairness or oppression." (citing *Golden v. Tomiyasu*, 387 P.2d 989, 995 (Nev. 1963) (stating that, while a power-of-sale foreclosure may not be set aside for mere inadequacy of price, it may be if the price is grossly inadequate and there is "in addition proof of some element of fraud, unfairness, or oppression as accounts for and brings about the inadequacy of price" (internal quotation omitted)))).

The *Shadow Wood* court did not adopt the restatement. *Compare Shadow Wood*, 366 P.3d at 1112–13 (citing the restatement as secondary authority to warrant use of the 20% threshold test for grossly inadequate sales price), *with St. James Village, Inc. v. Cunningham*, 210 P.3d 190, 213 (Nev. 2009) (explicitly adopting § 4.8 of the Restatement in specific circumstances); *Foster v. Costco Wholesale Corp.*, 291 P.3d 150, 153 (Nev. 2012) ("[W]e adopt the rule set forth in the Restatement (Third) of Torts: Physical and Emotional Harm section 51."); *Cucinotta v. Deloitte & Touche, LLP*, 302 P.3d 1099, 1102 (Nev. 2013) (affirmatively adopting the Restatement (Second) of Torts section 592A). Because Nevada courts have not adopted the relevant section of the restatement at issue here, the *Long* test, which requires a showing of fraud, unfairness, or oppression in addition to a grossly inadequate sale price to set aside a foreclosure sale, controls. *See* 639 P.2d at 530.

Nevada has not clearly defined what constitutes "unfairness" in determining commercial reasonableness. The few Nevada cases that have discussed commercial reasonableness state, "every aspect of the disposition, including the method, manner, time, place, and terms, must be commercially reasonable." *Levers v. Rio King Land & Inv. Co.*, 560 P.2d 917, 920 (Nev. 1977).

This includes "quality of the publicity, the price obtained at the auction, [and] the number of bidders in attendance." *Dennison v. Allen Grp. Leasing Corp.*, 871 P.2d 288, 291 (Nev. 1994) (citing *Savage Constr. v. Challenge–Cook*, 714 P.2d 573, 574 (Nev. 1986)).

Here, plaintiff fails to set forth sufficient evidence to show fraud, unfairness, or oppression so as to justify the setting aside of the foreclosure sale. Plaintiff's filings primarily cite the sale price at foreclosure to justify setting aside the sale. (ECF No. 43). This argument overlooks the reality of the foreclosure process. The amount of the lien—not the fair market value of the property—is what typically sets the sales price.

Plaintiff cites the CC&Rs mortgage protection clause as evidence of "unfairness" present in the foreclosure process. (ECF No. 43). This court has ruled that language in a mortgage protection clause purporting to subordinate a HOA lien to the first deed of trust does not, without more, constitute unfairness in the context of a HOA foreclosure.[5] *See, e.g.*, *Bank of America, N.A. v. Hollow de Oro Homeowners Association*, --- F. Supp. 3d. ----, 2018 WL 523354 (D. Nev. Jan. 23, 2018).

Plaintiff argues that oral postponement of the foreclosure sale constitutes evidence of unfairness or oppression. (ECF No. 43). Under NRS 107.082(1), a foreclosure sale can be continued orally for up to three times before a new notice of sale is required to be issued and recorded. *JED Property, LLC v. Coastline RE Holdings NV Corp.*, 131 Nev. Adv. Op. 11, 343 P.3d 1239, 1241 (Nev. 2015). Here, the HOA postponed the sale three times. Accordingly, the HOA was required to provide only oral notice of the postponement. *See id.*

Further, plaintiff's argument that the foreclosure deed did not comply with NRS 116.31164 does not provide plaintiff with a colorable argument to set aside the foreclosure sale. *See discussion section 2, supra*.

Accordingly, plaintiff's commercial reasonability argument fails as a matter of law as it has not set forth evidence of fraud, unfairness, or oppression. *See, e.g.*, *Nationstar Mortg., LLC v. SFR Investments Pool 1, LLC*, No. 70653, 2017 WL 1423938, at *2 n.2 (Nev. App. Apr. 17, 2017)

---

[5] Further, the Supreme Court of Nevada has explicitly rejected plaintiff's implied argument that a mortgage protection clause can supersede the statutory structure of NRS 116.3116. *See SFR Investments*, 334 P.3d at 418-19.

("Sale price alone, however, is never enough to demonstrate that the sale was commercially unreasonable; rather, the party challenging the sale must also make a showing of fraud, unfairness, or oppression that brought about the low sale price.").

### *4. Bona fide purchaser status*

Because the court concludes that plaintiff failed to properly raise any equitable challenges to the foreclosure sale, the court need not address the parties' arguments regarding whether SFR was a bona fide purchaser for value. *See Nationstar Mortg., LLC*, No. 70653, 2017 WL 1423938, at *3 n.3.

### b. *Unjust enrichment*

Plaintiff argues that even if the court quiets title in favor of defendant, the court should deny defendants' motion for summary judgment on plaintiff's unjust enrichment claim because plaintiff expended money to maintain the property after the HOA sale. (ECF No. 43).

Under Nevada law, unjust enrichment is an equitable doctrine that allows recovery of damages "whenever a person has and retains a benefit which in equity and good conscience belongs to another." *Unionamerica Mortg. & Equity Trust v. McDonald*, 626 P.2d 1272, 1273 (Nev. 1981); *see also Asphalt Prods. v. All Star Ready Mix*, 898 P.2d 699, 701 (Nev. 1995). To state an unjust enrichment claim, a plaintiff must plead and prove three elements:

> (1) a benefit conferred on the defendant by the plaintiff;
> (2) appreciation by the defendant of such benefit; and
> (3) an acceptance and retention by the defendant of such benefit under circumstances such that it would be inequitable for him to retain the benefit without payment of the value thereof.

*Takiguchi v. MRI Int'l, Inc.*, 47 F. Supp. 3d 1100, 1119 (D. Nev. 2014) (citing *Unionamerica*, 626 P.2d at 1273).

Here, plaintiff alleges that it made property tax and property insurance payments (among others) to maintain and preserve the property "because it thought the Deed of Trust survived and it wanted to preserve the collateral for its Loan." (ECF Nos. 1, 43). Plaintiff asserts that it has therefore pleaded and offered evidence to support each element of an unjust enrichment claim. (ECF No. 43).

SFR responds that the voluntary payment doctrine bars plaintiff from recovering on a theory of unjust enrichment, citing *Best Buy Stores, L.P. v. Benderson-Wainberg Assocs., L.P.*, 668 F.3d 1019, 1030 (8th Cir. 2012). "The voluntary payment doctrine is an affirmative defense that prevents recovery of amounts voluntarily paid." *JPMorgan Chase Bank, N.A. v. SFR Invs. Pool 1, LLC*, 414 P.3d 812 (Nev. 2018). "The voluntary payment doctrine is a long-standing doctrine of law, which clearly provides that one who makes a payment voluntarily cannot recover it on the ground that he was under no legal obligation to make the payment." *Best Buy*, 668 F.3d at 1030.

On March 15, 2018, the Supreme Court of Nevada considered the same arguments presented here in a case between the same litigants. *See JPMorgan Chase Bank, N.A. v. SFR Invs. Pool 1, LLC*, 414 P.3d 812 (Nev. 2018). The court upheld a district court's order granting summary judgment in favor of SFR on JPMorgan's unjust enrichment claim based on the voluntary payment doctrine. *Id.* The court held, "for purposes of the voluntary payment doctrine, 'voluntary' means 'without protest as to its correctness or legality,' *Nev. Ass'n Servs.,* 130 Nev. at 954, 338 P.3d at 1253, and it is undisputed that JPMorgan did not make the payments under protest." *Id.* Further, "it is undisputed that JPMorgan was aware of the pertinent facts when it made the post-sale payments and was simply unaware of the legal effect of the sale. It appears to be the generally accepted rule that a mistake of law (as opposed to a mistake of fact) will not preclude application of the voluntary payment doctrine." *Id.*

Here, when presented with legally indistinguishable facts from those considered by the Supreme Court of Nevada in *JPMorgan*, the court holds that the voluntary payment doctrine bars plaintiff from recovering on its unjust enrichment claim. *See id.*

**IV.  Conclusion**

In light of the foregoing, plaintiff has not shown that it is entitled to judgment as a matter of law. Conversely, the HOA and SFR's motions demonstrate that they are entitled to judgment as a matter of law, as the property at issue transferred to SFR free and clear of the deed of trust.

. . .

. . .

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that plaintiff's motion for summary judgment (ECF No. 40) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that the HOA's motion for summary judgment (ECF No. 36) be, and the same hereby is, GRANTED, consistent with the foregoing.

IT IS FURTHER ORDERED that SFR's motion for summary judgment (ECF No. 39) be, and the same hereby is, GRANTED, consistent with the foregoing.

IT IS FURTHER ORDERED that SFR shall prepare and submit to the court a proposed judgment consistent with the foregoing within thirty (30) days of the date of this order.

DATED June 28, 2018.

_____
UNITED STATES DISTRICT JUDGE